IN THE UNITED STATE'S DISTRICT COURT
FOR THE DISTRCIT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| VS. | : | |
| | : | C.R. NO.: 05-62T |
| CHRISTOPHER J. BORELLI | : | |

DEFENDANT'S MOTION TO SUPPRESS ORAL AND TANGIBLE EVIDENCE

NOW, comes Christopher J. Borelli, by and through counsel and respectfully requests this Honorable Court enter an order suppressing any and all evidence obtained directly or indirectly as a result of an illegal search and seizure of him and his premises on October 8, 2004.

In support of his motion Defendant incorporates the attached memorandum of law and further states:

1. Agents of the Federal government entered and searched his home without an arrest warrant or search warrant.

2. Neither Defendant nor anyone else gave the police permission to wander through the house looking for evidence or the Defendant.

3. After an illegal entry by government agents, Defendant's room and home was searched and Defendant was seized.

4. Defendant, and family were threatened and coerced by the government agents into signing a consent to search form after narcotics had been located and after defendant had been seized.

5. Defendant was not given Miranda Rights and was unable to read the alleged consent form before being coerced into signing it.

6. Defendant was taken to the police station and a statement was taken from him as a direct result of the illegal search and seizure.

7. The tangible evidence seized as well as the oral and written admissions were obtained in violation of the IV, V and VI Amendments of the United States Constitution.

WHEREFORE, Defendant hereby requests a hearing and after said hearing, requests an order of this Honorable Court suppressing any and all evidence obtained against him in violation of his rights.

Defendant,
Christopher J. Borelli
By His Attorney,

Thomas F. Connors, Esq., #2108
454 Broadway
Providence, RI 02909
(401) 751-3900
(401) 751-8983 (Fax.)

Joseph J. Voccola, Esq., #4132
454 Broadway
Providence, RI 02909
(401) 751-3900
(401) 751-8983 (Fax.)

## CERTIFICATION

I hereby certify that a copy of the within Motion was mailed to the U.S. District Court, District of Rhode Island, 1 Exchange Terrace Providence, RI 02903 and to Stephen G. Dambruch, Assistant U.S. Attorney, 50 Fleet Center 8th Floor Providence, RI 02903 on this 10th day of June, 2005.

Thomas FC

IN THE UNITED STATE'S DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| VS. | : | C.R. NO.: CR 05-62T |
| | : | |
| CHRISTOPHER J. BORELLI | : | |

DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT
OF HIS MOTION TO SUPPRESS
TANGIBLE AND INTANGIBLE EVIDENCE

## FACTS

At around 6:00 p.m. on October 8, 2004 at least six (6) agents from the Federal government and Woonsocket Police responded to 21 Warren Avenue Woonsocket, RI where Defendant and his mother and father resided.

Agents were at both the front and back doors to the home. Defendant's mother, Donna Borelli responded to knocking on the front door.

She opened the door and was confronted by men not in uniform and not displaying their badges. They had no warrant.

One agent stated, "we're here for Chris." The screen door was opened. At that moment, Mrs. Borelli heard loud banging on the back door and stated to the people at her front door to "stay here, I'll get the back door."

There was no response by the agents. She went to the back door, they said they were police, she told them to come around to the front of the house.

She did not open the back door. When she was returning to the front door, the agents were in her living room looking around and some were in the hallway heading towards Defendant's bedroom.

Both Defendant and his father were in their respective beds while this was occurring. Defendant's father, James Borelli was just stepping out of his bedroom to see what was going on and met agents right outside his bedroom door in the hallway.

He attempted to direct the agents back towards the living room as his wife was just coming back from the back room.

Agents had walked around the furniture in the living room and were looking at some ash trays in the living room.

The Defendant then came out to see what was going on.

Agents then stated "we know you have it" referring to crack and stating that they had been watching Thomas Gaffney coming and going.

Mrs. Borelli then stated that Mr. Gaffney comes over to play video games with her other son often.

The agents then responded, "how can you sit here and lie?"

"We'll arrest everyone in the house and we'll take your parent's house if there is not cooperation from you." (meaning the Defendant)

The Defendant was sitting on the couch while he was surrounded by the agents all standing, yelling, arguing and stating "he's getting 20 years!"

This had been going on for approximately ½ hour and Mrs. Borelli told them she was late for work at Honeywell which started at 8:00 a.m.

She kept asking permission to leave her house.

No rights were read to Defendant or anyone else.

Defendant was taken to his room by 2 agents who kept him in there about 10 minutes.

Defendant gave them the shoe box from the closet with the narcotics in it. They took it but then put it back on the shelf.

Defendant was shown a form and requested to sign. He asked to speak to his parents first, the agents refused.

He signed. The agents came out and stated “we got the drugs.”

The form was then presented to Mr. Borelli to sign. He stated, “I don’t have much of a choice, do I?”

The agents replied “we can get a warrant, we’ll wait right here in the house.”

Mrs. Borelli was then given permission to go to work as the agents came out of the bedroom with the Defendant.

Defendant was then taken to the police station by the police.

He gave a type written statement to the police and was let go. He was told at the station that he was not going to be prosecuted if he gave them a statement.

Defendant was rearrested in May of 2005.

I. WARRENTLESS ENTRY INTO THE HOME

The police had no search warrant for 21 Warren Avenue Woonsocket, RI nor did they have an arrest warrant.

The police did not ask permission to enter and Mrs. Borelli did not consent. Instead, before any thing else could happen she heard banging on the back door and stated “stay here, I’ll get the back door.”

A warrantless search of a house is per se unreasonable. Payton vs. New York, 445 U.S. 573, 586 100 S.Ct. 1371, 1380 63 L-Ed 2d. 639 (1980) and absent exigency or consent, warrantless entry into the home is impermissible under the Fourth Amendment.

Steagald vs. United States, 451 U.S. 204, 211 101 S.Ct 1642, 1647 68 L.Ed. 2d. 38 (1981).

Evidence recovered following an illegal entry of the home is inadmissible and must be suppressed. Wong vs. United States, 371 U.S. 471, 484-87, 83 S.Ct. 407, 415-17, 9 C. Ed. 2d. 441 (1963).

There were no exigent circumstances confronting the police that morning. No warrants were to be served, no arrest to be made and the door was opened by Mrs. Borelli to talk with them.

Unless exigent circumstances exist, warrantless searches are impermissible. Katz vs. United States, 389 U.S. 347, 88 S.Ct 507, 19 L.Ed 2d. 576 (1967).

The test for determining exigent circumstances in the first circuit "is whether there is such a compelling necessity for immediate action as will not brook the delay of obtaining a warrant." United States vs. Adams, 621 F.2d. 41, 44 (1st Cir. 1980).

II. CONSENT TO SEARCH

Without a warrant or exigent circumstances, the only other valid ground to search the Defendant's residence is by consent.

Here, no consent to enter the residence was granted. However, after agents had begun conducting a search and threatened the Defendant and family, a consent to search form was signed by the defendant, and afterwards by Defendant's father.

"The existence of consent to a search is not lightly to be inferred." United States vs. Patacchia, 602 F.2d 218, 219 (9th Cir. 1979).

The government always bears the burden of proof to establish the existence of effective consent." Florida vs. Royer, 4160 U.S. 491, 497 103 S.Ct 1319, 1323 75 L.Ed

2d. 229 (1983); Schneckloth vs. Bustamonte, 412 U.S. 218, 222, 93 S.Ct 2041, 2045 36 L.Ed 2d. 854 (1973); Bumper vs. North Carolina, 391 U.S. 543, 548, 88 S.Ct 1788, 1791, 20 L.Ed 2d 787 (1968).

"That burden is heaviest when consent would be inferred to enter and search a home, for protection of the privacy of the home finds it's roots in clear and specific constitutional terms: "The right of the people to be secure in their… houses… shall not be violated."

"[a]t the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." Silverman vs. United States, 365 U.S. 505, 511, 181 S.Ct 679, 682, 5 L-Ed 2d. 734.

In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Payton vs. New York, 445 U.S. at 589-90, 100 S.Ct at 1382.

Judicial concern to protect the sanctity of the home is so elevated that free and voluntary consent cannot be found by a showing of mere acquiescence to a claim of lawful authority. Bumper vs.Carolina, 391 U.S. at 548-49.

The government may not show consent to enter from the Defendant's failure to object to the entry. To do so would be to justify entry by consent and consent by entry. "This will not do." Johnson vs. United States, 333 U.S. 101 13, 685 S.Ct 367, 368, 92 L-Ed 436 (1948).

Such submission is not effective consent. Amos vs. United States, 255 U.S. 313, 317, 41 S.Ct 266, 267, 65 L-al 654 (1921).

The court looks to the totality of the circumstances, Schneckloth vs. Bustamonte, 412 U.S. 218 (1973), and the prosecution must show that it was freely and voluntarily given. Bumper vs. North Carolina, 391 U.S. 543 (1968) and that the consent was not the product of duress or coercion. Schneckloth, supra.

The Court can look to the consenting parties knowledge of the right to refuse consent, the possible vulnerable subjective state, and any evidence of inherently coercive tactics either in the nature of the questioning or the environment the questioning took place. United States vs. Twomey, 884 F 2d. 46 (1st Cir. 1989).

Here, the police entered the home illegally, acted as if they owned the premises, read no constitutional rights, surrounded and threatened Defendant with the arrest of his entire family and the loss of their home if he didn't show them where the drugs were.

In addition, two officers escorted him to his room alone, told him he had to sign the consent after he had given them the drugs and refused to allow him out of the room or to speak to his parents before he signed.

Under the totality of the circumstances this was not a free and voluntary consent on its own and certainly was obtained after their illegal entry into the home.

The father, Mr. Borelli, made a statement that he didn't have a choice but to sign and the police essentially answered no by stating that they were staying (illegally) in the home until they got a search warrant if he didn't sign. This is not free and voluntary and is the result of their illegal entry.

III. Admissions, Confessions

Here, the Defendant was taken to the police station after the police had recovered a substantial amount of illegal narcotics in the shoe box located in the Defendant's closet.

He was given his Miranda Rights at 7:30 a.m. at the police station and he gave a written witness statement at 7:41 a.m.

This statement was the direct result of the illegal entry into Defendant's home and should be excluded under Wong Sun.

Here, Defendant was clearly "seized" and arrested prior to his being taken to the police station by the agents.

A confession obtained through custodial interrogation after an illegal arrest should be excluded unless intervening events break the causal connection between the arrest and the confession so that it is sufficiently an act of free will to purge the primary taint. Taylor vs. Alabama, 457 U.S. 687; 102 S. Ct 2664; 73 L-Ed 2d 314 (1982) Brown vs. Illinois, 422 U.S> 590 (1975); Dunaway vs. New York, 442 U.S. 200 (1979) Wong Sun vs. United States, 371 U.S. 471 (1963).

Several factors that should be considered in determining whether a confession has been purged of the taint of the illegal arrest: "[the] temporal proximity of the arrest and the confession, the presence of intervening circumstances… and, particularly, the purpose and flagrancy of the official misconduct." Brown vs. Illinois supra at 603-604.

The government fears the burden of proving that a confession is admissible Taylor ibid.

A confession may be "voluntary" for purposes of the Fifth Amendment, in the sense that Miranda warnings were given and understood, is not by itself sufficient to purge the taint of the illegal arrest. In this situation, a finding of "voluntariness" for purposes of the Fifth Amendment is merely a threshold requirement for Fourth Amendment analysis. See Dunaway vs. New York, supra at 217.

The exclusionary rule when utilized to effectuate the Fourth Amendment, serves interest and policies that are distinct from those it serves under the Fifth Amendment. Brown vs. Illinois, 422 U.S. at 601.

"If Miranda warnings were viewed as a talisman that cured all Fourth Amendment violations, then the constitutional guarantee against unlawful searches and seizures would be reduced to a mere 'form of words.' (quoting Mapp vs. Ohio, 367 U.S. 643, 648 (1961).

Here the police took the Defendant to the police station and were taking a statement from him within an hour of their illegal entry and arrest of the Defendant.

There were no intervening events between the illegal entry and search and the statement taken from him by the police. The confession was the fruit of the illegal search and seizure and should be suppressed.

Respectfully Submitted,
Christopher Borelli,
By and Through His Attorneys,

Thomas F. Connors, Esq., #2108
454 Broadway
Providence, RI 02903
(401) 751-3900
(401) 751-8983 (Fax.)

Joseph J. Voccola, Esq., #4132
454 Broadway
Providence, RI 02909
(401)751-3900
(401) 751-8983 (Fax.)

CERTIFICATION

I hereby certify that a copy of the within Memorandum was mailed to the U.S. District Court, District of Rhode Island, 1 Exchange Terrace Providence, RI 02903 and to Stephen G. Dambruch, Assistant U.S. Attorney, 50 Fleet Center 8th Floor Providence, RI 02903 on this 10th day of June, 2005.

Thomas F C